J-S14015-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: N.R.K., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: I.G.K., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 163 MDA 2021 |

Appeal from the Decree Entered January 12, 2021
In the Court of Common Pleas of Huntingdon County Orphans' Court at
No(s):  CP-31-OC-4-2020

BEFORE:  BOWES, J., DUBOW, J., and MUSMANNO, J.

MEMORANDUM BY BOWES, J.:　　　　　　**FILED: JULY 14, 2021**

I.G.K. ("Father") appeals from the January 12, 2021 order granting the petition filed by H.H. and J.L.A. ("Mother" and "Stepfather," collectively, "Petitioners") to involuntarily terminate Father's parental rights to his daughter, N.R.K.  We affirm.

Mother and Father married in May 2017, and divorced in January 2020. N.T., 11/13/20, at 8; N.T., 9/22/2020, at 8.  N.R.K. was born of the marriage in September 2017.

The brief union was rife with domestic violence against Mother, N.R.K., and R.L.A., Mother's daughter from a prior relationship.  N.T., 11/13/20, at 5-7, 50-51; N.T., 9/22/20, at 20, 27-30, 33-35.  After separate episodes in November and December 2018, Mother obtained sole legal and primary physical custody of N.R.K. and a Protection From Abuse ("PFA") order

protecting herself and both children against Father.[1] N.T., 11/13/20, at 11-12, 53; N.T., 9/22/20, at 23, 31-32, 33-35. During the first incident, Father called Mother on the telephone while he was driving with then one-year-old N.R.K. and threatened to kill himself and the child by purposely crashing the vehicle. In the latter instance, Father wrestled N.R.K. away from Mother's arms and withheld the child for several hours without feeding her or changing her diaper.

Thereafter, Father was arrested on March 8, 2019 based upon an August 2018 altercation with R.L.A. Specifically, Father "cracked [R.L.A.'s] head open and she ended up needing staples" to close the wound. N.T., 9/22/20, at 20-22; Petitioners' Exhibit 1, 9/22/20. He pled guilty to aggravated assault, victim less than thirteen years of age, and was sentenced to one to two years of incarceration effective March 8, 2019.[2] N.T., 9/22/20, at 1; Petitioners' Exhibit 1, 9/22/20. Father last saw N.R.K. in February 2019. N.T., 11/13/20, at 3-4; N.T., 9/22/20, at 24-25.

Petitioners sought to terminate Father's parental rights to N.R.K. pursuant to § 2511(a)(1), (2), (9) and (b).[3] After a continuance due to the

---

[1] During February 2019, Father violated the PFA order, which is scheduled to expire on January 28, 2021. N.T., 11/13/20, at 15-16; N.T., 9/22/20, at 23, 31. Father's Exhibit 1, 11/13/20.

[2] Father testified that his maximum sentence was set to expire on March 8, 2021. N.T., 11/13/20, at 44. The record does not reveal whether he was, in fact, released on that date.

[3] Petitioners also filed a petition for adoption identifying Stepfather, who previously adopted R.L.A., as the adoptive parent of N.R.K.

COVID-19 pandemic and the concomitant judicial emergency, the orphans' court held evidentiary hearings on September 22, 2020 and November 13, 2020. N.R.K. was represented separately by a guardian *ad litem* and legal counsel.[4] Father, who was also represented by counsel, participated via video from SCI-Smithfield on September 22, 2020, and was physically present on November 13, 2020. Petitioners presented the testimony of Mother and the maternal grandmother, T.D. Father testified on his own behalf and offered the testimony of his spiritual advisor, Victor Gary Peters.

On January 12, 2021, the orphans' court involuntarily terminated the parental rights of Father pursuant § 2511(a)(2), (9), and (b). Father filed a timely notice of appeal, as well as a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). On February 16, 2021, the orphans' court filed an opinion setting forth its rationale.

Father presents the following questions for our review:

I. Whether the evidence was insufficient to support the termination of the parental rights of [Father] as related to N.R.K. if the termination was premised, either in whole or in part, on, [*inter alia*], the supposed repeated and continued incapacity, abuse, neglect, or refusal of the parent causing the child to be without essential parental care, control or subsistence necessary for the child's physical or mental well-being when most acts of alleged abuse presented as evidence occurred before N.R.K. was even born or reportedly happened when N.R.K. would have had no explicit or implicit memory and also because not a scintilla of

---

[4] Both the guardian *ad litem* and legal counsel supported the termination of Father's parental rights. N.T., 11/13/20, at 59-60. Counsel noted that N.R.K. was comfortable in her home with Mother and Stepfather, whom she recognized as her father. *Id*. at 60. In addition, counsel submitted a brief in this Court arguing in favor of affirming the termination of parental rights.

evidence was produced so as to try and prove that the conditions and causes of the abuse cannot or will not be remedied by [Father]?

II. Whether the evidence was insufficient to support the termination of the parental rights of [Father] as related to N.R.K. if the termination was premised, either in whole or in part, on, [*inter alia*], the "Parent" having been convicted of a felony under 18 Pa.C.S. § 2702 (relating to aggravated assault) involving R.L.K. n/k/a R.L.A. as the victim since [Father] was not the "parent" of R.L.K. n/k/a R.L.A. as that term is used in 23 Pa.C.S.A. § 2511(a)(9)(ii)?

III. Whether the [t]rial [c]ourt's reliance upon 23 Pa.C.S.A. § 2511(a)(9)(ii) as a basis for terminating [Father]'s parental rights was foreclosed by the doctrine of "judicial estoppel" since [Mother] previously successfully asserted in another proceeding that [Father] was not the "Parent" of R.L.K. n/k/a R.L.A. such that the decision to terminate his parental rights relative N.R.K. cannot be sustained as a matter of law?

Father's brief at 4-5 (suggested answers omitted).

In matters involving involuntary termination of parental rights, our standard of review is as follows:

The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." ***In re Adoption of S.P.***, 47 A.3d 817, 826 (Pa. 2012). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." ***Id.*** "[A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." ***Id.*** The trial court's decision, however, should not be reversed merely because the record would support a different result. ***Id.*** at 827. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. ***See In re R.J.T.***, [9 A.3d 1179, 1190 (Pa. 2010)].

- 4 -

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).  Stated plainly, "if competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *In re Adoption of T.B.B.,* 835 A.2d 387, 394 (Pa.Super. 2003) (citation omitted).

The termination of parental rights is governed by § 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, and requires a bifurcated analysis of the grounds for termination followed by the needs and welfare of the child.

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights.  Initially, the focus is on the conduct of the parent.  The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a).  Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.  One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted).  We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*) (quoting *Matter of Adoption of Charles E.D.M., II*, 708 A.2d 88, 91 (Pa. 1998)).

The orphans' court terminated Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(2), (9), and (b).  We have long held that, in order to affirm

a termination of parental rights, we need only agree with the orphans' court as to any one subsection of § 2511(a), as well as § 2511(b). ***See In re B.L.W.***, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). Instantly, we find that the certified record supports the orphans' court's decision to terminate parental rights pursuant to § 2511(a)(2) and (b), which provide as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . . .
>
>> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . . .
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2), and (b).

With regard to the termination of parental rights pursuant to § 2511(a)(2), we have indicated:

> In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa.Super. 2003) (citation omitted). Significantly, "[t]he grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re Adoption of C.D.R.*, 111 A.3d 1212, 1216 (Pa.Super. 2015) (quoting *In re A.L.D.*, 797 A.2d 326, 337 (Pa.Super. 2002)). Furthermore, "[p]arents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. . . . [A] parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous." *In re A.L.D.*, *supra* at 340 (internal quotation marks and citations omitted).

In *In re Adoption of S.P.*, 47 A.3d 817 (Pa. 2012), our Supreme Court, addressed the application of § 2511(a)(2) to incarcerated parents and concluded,

> incarceration is a factor, and indeed can be a determinative factor, in a court's conclusion that grounds for termination exist under § 2511(a)(2) where the repeated and continued incapacity of a parent due to incarceration has caused the child to be without essential parental care, control or subsistence and that the causes of the incapacity cannot or will not be remedied.

- 7 -

*Id*. at 328-29, 828; *see also In re D.C.D.*, 105 A.3d 662, 675 (Pa. 2014) (holding that incarceration prior to the child's birth and until the child was at least age seven renders family reunification an unrealistic goal and the court was within its discretion to terminate parental rights "notwithstanding the agency's failure" to follow court's initial directive that reunification efforts be made).

In finding the grounds for terminating Father's parental rights pursuant to § 2511(a)(2), the orphans' court emphasized Father's abusive behavior towards Mother and R.L.A., noting that it established that "domestic abuse is a longstanding pattern of behavior by [Father], rather than a recent aberration." Opinion in Support of Order, 2/16/21, at 6. Specifically, as to Father's discipline of R.L.A., the court referenced Mother's testimony that Father "told [R.L.A.] that that's how daddies treated their daughters, and he told her when [N.R.K.] was old enough he would do the same thing to her. I guess to make her not feel as bad, he told her that's what daddies do." *Id*. at 6 (citation to record omitted).

Moreover, the court recognized abusive behaviors already directed toward N.R.K. herself, reasoning, "It is difficult to imagine how threatening to kill one's own child by wrecking the car one is driving could not be characterized as abuse. Similarly, holding one's own child hostage from her mother as a bargaining chip to force the mother to return to the martial home, without food and without diaper changes, constitutes abuse." *Id*. at 5.

While acknowledging that Father had completed programs during his incarceration and made some progress in that regard, the orphans' court highlighted that these programs were mandated either by the sentencing court or the Pennsylvania Department of Corrections, and that the completion of these programs did not signal the end of the process but rather the beginning. *Id*. at 6-7. The court stated:

> In response to the above, [Father] rightfully argues that he has made great strides since being incarcerated for assaulting R.L.A., has completed anger management and parenting programs, and was arrested and convicted in regard to the assault based largely on his own written admission. In his eyes, this shows that he has remedied the causes of the abuse. While the [c]ourt recognizes these steps and applauds [Father] for the progress he has made, [Father]'s view of these actions is myopic. The programs he has participated in while incarcerated have been mandated either by this [c]ourt or by the Department of Corrections, lessening their weight as proof that [Father] has fully changed his abusive behavior. More significantly, [Father] does not recognize that he is still at a starting point, rather than an endpoint, in regard to changing his behavior for the better. In March, he will be released into a world beset by a pandemic-depressed economy, with the added strike against him of having a criminal record. It will take perseverance and the assistance of a good support network to continue on the right path. Meanwhile, N.R.K. is at a stage of her life where she is developing rapidly, both physically and emotionally, and needs stability and solid familial relationships. As has been observed by many other courts, children cannot wait for extended periods for their parents to remedy their problems. With hard work, [Father] may certainly, one day, be ready, willing, and able to serve as N.R.K.'s father, but that day will not come for some time. Petitioners have therefore proven, by clear and convincing evidence, that grounds for termination exist under § 2511(a)(2).

*Id*. at 6-7.

Father argues that Petitioners failed to establish continued abuse under §2511(a)(2), as there was no abuse for more than two years as Father was subject to a PFA order and then incarcerated since March 19, 2019. Father's brief at 21-22. Father further asserts that Petitioners failed to establish and present any evidence that he cannot or will not remedy the conditions and/or causes of the abuse. *Id*. at 19-20, 22-23. Specifically, Father points to his incarceration and the programs in which he participated while in prison. *Id*. at 23-24. Moreover, Father maintains that the orphans' court utilized the incorrect standard in assessing whether he could remedy the conditions and/or causes of the abuse, stating, "The standard is not whether the causes and conditions of the abuse 'have been' remedied, but rather will they someday be remedied. . . ." *Id*. at 24.

The certified record supports the orphans' court's finding that Petitioners established by clear and convincing evidence the grounds for the termination of parental rights pursuant to § 2511(a)(2). At the time of the hearing, Father had been incarcerated for one and one-half years, since March 2019, and had not seen or had contact with N.R.K. N.T., 11/13/20, at 3-4, 35; N.T., 9/22/20, at 24-25. Furthermore, as the orphans' court accurately observed, the certified record reveals a pattern of abusive behavior by Father, including those directed at N.R.K., and a stated future intent directed toward N.R.K. N.T., 11/13/20, at 5-7, 50-51; N.T., 9/22/20, at 20, 27-30, 33-35. Although Father completed several programs while incarcerated, which the orphans' court acknowledged, these accomplishments were a requirement of Father's

incarceration and are not indicative of his behavior and actions once released from prison. N.T., 11/13/20, at 41-44; Father's Exhibits 3, 4, and 5. Hence, the certified record substantiates the grounds for termination pursuant to subsection (a)(2).

Significantly, as to Father's assertion that he may gain the ability to parent his daughter at some undisclosed point in the future, it is entirely speculative to surmise if, and when, Father will ever be in a position to care for N.R.K. Similarly, regardless of Father's participation in programs as a component of his incarceration, whether he will ever remedy the conditions and/or causes related to his pattern of domestic violence is also speculative. These unsettled prospects are simply unacceptable. As this Court has often opined, "[A] child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." **In re Adoption of R.J.S.**, 901 A.2d 502, 513 (Pa.Super. 2006). This case exemplifies that principle. Hence, for all of the foregoing reasons, we do not disturb the orphans' court's determination. **See In re Adoption of M.E.P.**, 825 **supra** at 1272.[5]

---

[5] In light of our conclusion that the certified record sustains the orphans' court's determination as to subsection (a)(2), we do not address Father's remaining issues relating to the applicability of subsection (a)(9). **See In re B.L.W.**, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*) (we need only agree
*(Footnote Continued Next Page)*

We next determine whether termination was proper under § 2511(b). However, since Father failed to present any argument concerning § 2511(b) in his Rule 1925(b) statement or brief, he waived any challenge related to that section. *See In re M.Z.T.M.W.*, 163 A.3d 462, 465-66 (Pa.Super. 2017) (footnote omitted) ("Because Mother failed to include a challenge to Section 2511(b) in her statement of questions involved and concise statements that issue is also waived"). Nevertheless, in an abundance of caution, and mindful of N.R.K.'s best interest, we reviewed the certified record and observe that, had Father preserved this claim, it would fail.

Specifically, the record bears out that N.R.K. does not have a substantial relationship with Father. Indeed, other than two supervised visitations, N.R.K. has had no contact with Father since December 2018. Father is a stranger to the soon to be-four-year-old child. In contrast, N.R.K. recognizes Stepfather, who also adopted R.L.A., as the only father figure in her life. Thus, as the orphans' court accurately surmised, "severing the legal bond between N.R.K. and [Father] would have little, if any, detrimental effect on her, and would have significant positive effects. Just the opposite is true if that bond is preserved." Opinion in Support of Order, 2/16/21, at 17-18.

While Father may profess to love N.R.K., a parent's own feelings of love and affection for a child, alone, will not preclude termination of parental rights.

---

as to one subsection of § 2511(a), as well as § 2511(b) to affirm the termination of parental rights).

***In re Z.P.***, ***supra*** at 1121.  N.R.K. is entitled to permanency and the stability of the only family she knows.  As we stated, a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting."  ***Id***. at 1125.   Rather, "a parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment."  ***In re B., N.M.***, 856 A.2d 847, 856 (Pa.Super. 2004) (citation omitted).

Accordingly, for all of the foregoing reasons, we find that the orphans' court did not abuse its discretion in terminating Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(2) and (b).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/14/2021

- 13 -